# Patterson *versus* Patterson.

1. Two persons, W. and R., being liable as sureties for another, and one of them holding a judgment against the debtor for a debt paid for him, agreed in writing under seal, in 1847, that if any loss is sustained in final settlement of the debts and claims paid by them for the said debtor, the loss sustained by them be equalized between them.

In 1849, another agreement in writing was made between the parties, in which provision was made for payment of the *joint debts* of the parties thereto, and for a settlement after the expiration of a lease by R. to W. for six years, it being stated in the said second agreement that "it is understood between the parties that anything herein contained shall not render void or of no effect an article of agreement made September, 1847, in reference to losses that might be sustained *in consequence of the liabilities for J. P.*"

It was *Held*, that the second agreement did not prevent a suit being maintained on the first agreement before the expiration of the lease—the first agreement was not merged in the second—the agreements were distinct, one applying to liabilities for which they were *sureties*, the second to other debts due by them jointly,—and the first agreement was the subject of a separate suit.

[Patterson v. Patterson.]

2. Evidence of payments by defendant on the joint debts, was not admissible in an action on the first agreement.

3. In an action on the first agreement it was proper evidence for the plaintiff to show that before the suit was brought he had arranged some of the debts for which he and the defendant were sureties, though he had not actually paid the substituted securities till after the institution of the suit, but before the trial.

4. Where two persons are jointly and severally bound in unequal sums as sureties for another person, an agreement in writing under seal between themselves to equalize the loss will be obligatory and may be enforced in an action at law.

Error to the Common Pleas of *Juniata county*.

This was an action *of debt* by *Robert Patterson v.* William H. Patterson, brought in 1852, founded on a written agreement under seal, between the plaintiff and defendant. The agreement was dated 1st September, 1847.

It provided that, Whereas the said Wm. H. P. and Robt. P. had at various times and places become liable *and security* for John Patterson (brother to Wm. H. and R.), for a large amount of debts, some of which are paid by the said Wm. H. and R., and some yet unpaid, and that, *Whereas*, the said Robert also held a judgment for something upwards of seven thousand dollars on the docket of said county given to him by the said John Patterson, for a debt paid for him by the said Robert. Now it is the agreement and distinct understanding between the said Wm. H. and Robert Patterson, that if any loss is sustained in final settlement of the debts and claims paid by the said Wm. H. and Robert, for the said John, the loss sustained by both to be equalized so that neither one is to lose more than the other, in consequence of the above stated liabilities, and the money paid by the said Wm. H. and Robert.

Witness our hands and seals, day above written,

WM. H. PATTERSON, [L. S.]
ROBERT PATTERSON, [L. S.]

In the *statement* it was averred that Robert paid for John Patterson more than William paid, the sum of $9279; for the one-half *of which sum* with interest from 3d September, 1850, this suit was brought.

On part of plaintiff was given in evidence the agreement referred to.

Also a mortgage of Robert Patterson to Jas. Wilson, dated 1st July, 1845, to secure the payment of $4500 in six years, with interest payable semi-annually, and a receipt dated 8th April, 1852, for $4707.75, in full of principal; the interest having been paid to 1st July, 1851. Also a mortgage of Robert Patterson to John Vogle, dated 1st July, 1845, to secure payment of $2500 in

[Patterson *v.* Patterson.]

six years, with interest payable semi-annually; and receipts for its payment in April and June, 1851.

No. 122, September Term, 1845. Judgment, Robert Patterson *v.* John Patterson, for $7083.71. Interest 1st July, 1845. Assignment of this judgment on 24th March, 1849, by Robert Patterson to Isabella Kelly, as collateral security. Revived 3d September, 1850, for $9279.65.

Other evidence was given.

*John Patterson* testified: The consideration of the mortgages given in evidence were debts I owed; these debts were assumed by *Robert Patterson;* the consideration of the judgment to Robert was the same debt for which Robert gave the mortgages; myself and brothers Robert and William H., owed a debt jointly to Isabella Kelley of about $2000; Robert gave her an assignment of a judgment against me to hold as collateral security; that debt was for a legacy under my father's will; the four brothers were executors; Andrew was the fourth; we bought the interest of Andrew in said real estate and assumed all the debts and legacies of my father's estate.

The plaintiff claimed to recover the one-half of the moneys thus paid by him.

On part of *defendant* it was alleged that the agreement of September, 1847, referred to, afforded no cause of action; that there was nothing in it which was the subject-matter of an action, but that it was but an agreement as to the terms and principles on which a settlement should be made between the parties.

Secondly, that by a written agreement between the plaintiff and defendant of 3d April, 1849, the agreement of 1st September, 1847, was *merged* and formed part of the arrangement for raising money for the payment of debts and legacies.

Thirdly, that if the agreement of 1847 did afford a cause of action, the defendant had a right to set off claims which he had against the plaintiff, and to show that the plaintiff was largely his debtor.

The agreement of 3d April, 1849, betwen William and Robert Patterson was given in evidence. It was not under seal. It was stated in it that Robert had leased to William on 27th March last, all his interest in certain lands and appurtenances belonging to the firm of Wm. H. P. & Co. for the term of six years from the 1st inst., and had also assigned all his interest in the personal estate of the firm, to the said William. It was agreed that William was to use the interest and investments or capital, in carrying on the *tanning* business. The amount of the investments of each was to be ascertained by settlement of the partnership accounts, and the balance of the individual accounts between the parties to be ascertained by a settlement of accounts between them, the investments of each to be equalized by a note with interest. William was to

pay rent during the lease.  The profits were to be applied to the debts for which they were *jointly* bound, from time to time as it could be spared from their business until such debts were paid. William was to account for any residue of profits after payment of the debts, deducting $200 for his services.  The business was to be closed at the expiration of the lease, and if any balance was due to Robert after paying his part of the debts and any indebtedness to William, then the balance to be paid to Robert.  It was agreed that Robert was to release to William all his interest in all real estate held in common by himself, William, and John, and was to assign his interest in all outstanding claims due to him, William, and John jointly, and William to account for one-third of the same. Robert was to assign to William his interest in all debts due to the estate of his father, for which William was to account.  The receipt of Isabella Kelley and the interest of Robert on the judgment assigned to her as collateral security was to be assigned to William ; and after the payment of the debt of Isabella Kelley, William to account to Robert for no greater amount of that judgment than he received thereon: and it proceeded, " but it is understood between the parties that anything herein contained shall not render void or of no effect an article of agreement, made September, 1847, in reference to losses that might be sustained *in consequence of the liabilities for J. P.*  The several sums mentioned in the lease, the assignment of personal property and releases are not to be taken into account in settlement.  Said Wm. H. is to render an account of all produce and property of whatever kind he may receive from the lands released to him."  In witness whereof, &c.

The lease was given in evidence—also an assignment by Robert to William of partnership property.

Evidence was given, on part of defendant, of payments by William of debts of John for which William and Robert were *security*, which debts were of dates *prior* to the agreement of September, 1847.

On part of the defendant it was then offered to prove that before and since the date of the agreement of 1st September, 1847, William Patterson, the defendant, had paid large sums of money for which he and Robert and John were liable.  The several offers were marked A, B, C, D, and were all overruled and exceptions were taken.  The evidence referred to in these offers seemed to relate to legacies charged on lands devised to William, Robert, Andrew, and John, in the will of their father, of which the said four sons were executors, and for which they gave their bonds. It was alleged that these bonds were payable on 1st September, 1847, and that the interest accruing since that time and the principal had been paid by the defendant.  John Patterson, it was said, was insolvent in 1845.  It was stated in the third of the offers that it was made as well to show payments by William,

under the agreement of September, 1847, as by way of set-off to any claim the plaintiff may have in this action.

Thus it did not appear that the claims referred to in the offers were for debts for which William and Robert were *security* for John.

On part of the defendant, the following points were submitted—

1. That there is no such cause of action set out in the plaintiff's statement as will entitle him to recover in this suit.

2. That there is no such cause of action set forth in the plaintiff's writ and statement as will entitle him to recover upon any evidence given in the cause.

3. That the agreement of the 1st September, 1847, does not involve any subject-matter which gives a right of action to either party to it upon the instrument itself, but that the consideration for entering into it is an existing state of accounts and liabilities, which alone are the subject of an action to be affected by the terms mentioned in that agreement, by which such settlement or action is to be governed.

4. That the agreement of the 1st September, 1847, is so merged in the agreement between the parties, of the 3d April, 1849, that this action cannot be maintained upon it, but that it is the legal interpretation of the agreements of the parties, that their settlement was to be postponed until the end of the *six years* mentioned in that agreement.

5. That upon the statement filed in this cause, and the proof, that in fact $4707.75 of the plaintiff's claim was not paid by him *until after this suit was brought,* he cannot recover that amount in this action, but must be limited in the amount of his claim to the money actually paid by him.

Graham, President Judge, charged that by the agreement of September, 1847, William and Robert were *severally* liable for debts of John, and were *jointly* liable for other of his debts, and to equalize their losses, agreed that upon a final settlement and payment of the debts of John, for which they or either of them were liable, the loss should be equalized between them, so that one should not lose more than the other. Robert, the plaintiff in this case, alleges he has paid more of John's debts embraced by the terms of their agreement, than William has paid, and claims to recover one-half of the sum he has paid more than William. The parties have adduced evidence of the amounts paid by them respectively, and but few of the items were controverted. He referred to the jury to determine the state of the accounts, and to find accordingly.

In answer to the first and second points, he observed that if there was no cause of action set out in the statement, the defendant should have demurred. The *third* he answered in the negative. To the *fourth :* That there was nothing in the agreement of

[Patterson *v.* Patterson.]

3d April, 1849, to preclude the plaintiff from maintaining this action; and the *fifth* he answered in the negative, observing that "the proof is that the mortgages given by Robert, were received by the mortgagees in payment and satisfaction of the debts John owed them; and in the agreement of 1847, it is recited that the debts which compose plaintiff's claim in this action, were paid by Robert for John."

Verdict was rendered for the plaintiff for $2949.31, which was subsequently reduced by crediting an amount considered by the judge to have been erroneously disallowed by the jury; and on 10th December, 1853, judgment was entered.

It was assigned for error,—1, 2, 3, and 4. That the Court erred in overruling the evidence referred to in the four bills of exceptions. 5. In the opinion that there was a cause of action set out in the statement. 6. That such a cause of action was proved as entitled the plaintiff to recover on his *statement.* 7. In the opinion that the agreement of September, 1847, involved the subject-matter of an action. 8. In the opinion that it was not merged in that of 1849. 9. In refusing to answer the *fifth* point affirmatively.

*Watts,* with whom was *Doty,* for plaintiff in error.—It was contended that it was not intended that the agreement of 1847 should be actionable, but only evidence of the understanding between the parties to which reference might be made. But if it were actionable, it was merged in that of 1849. It is not stated in the latter agreement that it is not to *affect* the agreement of 1847, but only that it is not to render it *void.*

As to the bills of exception, the object was to show payments by William for Robert, which made the plaintiff debtor. It was offered to prove payment of joint debts and legacies under their father's will, and that the plaintiff was indebted several thousand dollars to defendant; and yet the plaintiff was permitted to recover in this action.

The agreement of 1849 provides that after payment of the debt to Isabella Kelley, William was to account for no greater sum than he shall receive upon the judgment against John and then follows a stipulation, which, it was alleged, was intended to provide that when a settlement was made, their losses as securities for John should be equalized. It was alleged that those securities were not all discharged, for the agreement of 1849 was to continue for six years to enable William to discharge them as well as other debts for which they were liable. If the plaintiff has a right of action, he should have shown that all the joint or several liabilities *for John* were discharged, for it was said that it was not till then that a right of action could accrue.

*Casey* and *Parker,* with whom was *Sharon,* for defendants in
2 R

error.—The agreement of 1847 had reference only to the personal debts of *John, for which they were security;* and not to debts which they owed as executors or as devisees under their father's will. It was not intended to apply to debts which John owed as devisee, and which were liens on the land. The object of the agreement of 1849 was to arrange the legacies and debts of their father's estate, and carrying on the tanning business.

The first four assignments involve the same principle, and all related to matters reserved in the agreement of 1849, for settlement at the end of the lease.

The question of merger is one of *intention;* and it was said that such an idea is at variance with their agreement.

The opinion of the Court was delivered by

KNOX, J.—Under the agreement of the 1st September, A. D. 1847, William H. Patterson was liable to pay to Robert a sum which would equalize their payments, made on behalf of their brother John Patterson. The only point in the case before us, about which there can be any difficulty, is this. Is the agreement of 1st September, 1847, upon which this action is based, so affected by that of 3d of April, 1849, that it cannot be made the subject of a separate suit before the expiration of the time fixed in the second agreement?

There is no necessary connexion between these two contracts. The one has reference solely to liabilities incurred for John Patterson, whilst the effect of the other was to transfer to William H. Patterson, for a given period of time, the entire interest in the property and business theretofore owned and carried on by them jointly. This provision is to be found in the second contract—" But it is understood between the parties that anything herein contained shall not render void or of no effect an article of agreement made September, 1847, in reference to losses that might be sustained in consequence of the liabilities for J. P."

By express terms, then, the contract now in question is preserved, and its binding force acknowledged. Nor can we find anything in the second agreement which satisfies us that the time of execution with respect to the first is thereby prolonged. Such may have been the intention of the parties, but it is not so expressed in what is to us the evidence of their intention, viz., the writing itself.

It is unnecessary to examine the numerous errors assigned in detail. It was frankly admitted upon the argument by the counsel for the plaintiff in error, that they relied mainly upon the question which we have just considered.

The evidence contained in offers marked A, B, C, D, was impertinent to the issue trying, and consequently there was no error in rejecting it.

[Patterson *v.* Patterson.]

The 5th, 6th, and 7th assignments relate to the cause of action, and its sufficiency. It certainly cannot seriously be questioned, but that where two persons are jointly and severally bound in unequal sums as security for a third, an agreement in writing under seal between themselves to equalize the loss will be obligatory, and may be enforced in an action at law. There is nothing in such an agreement forbidden either by the principles of law or morality, and its consideration may be found, if the character of the instrument rendered it essential, in the mutual undertakings.

The 8th has already been noticed, and the 9th has no validity.

Judgment affirmed.

Lewis, J., and Woodward, J., dissented.